UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC ST. JOHN,<br><br>   Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Case No. 1:25-cv-00069-JLT-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 10, 13) |

Isaac St. John ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 10, 13-14). For the reasons stated below, the undersigned recommends granting Plaintiff's motion for summary judgment, denying the Commissioner's cross-motion for summary judgment, and remanding for further administrative proceedings.

////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

# I. JURISDICTION

Plaintiff protectively filed for disability insurance benefits on August 4, 2022, alleging an onset date of August 1, 2020. (AR 227-30). Benefits were denied initially (AR 67-87, 111-16), and upon reconsideration (AR 88-104, 117-22). Plaintiff appeared at a telephonic hearing before an Administrative Law Judge ("ALJ") on March 26, 2024. (AR 42-66). Plaintiff was represented by counsel and testified at the hearing. (*Id.*). On April 17, 2024, the ALJ issued an unfavorable decision (AR 14-41), and the Appeals Council denied review (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

# II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the Appeals Council and ALJ decisions, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 41 years old at the time of the hearing. (*See* AR 263). He completed high school. (AR 268). Plaintiff lives in a condominium with his girlfriend. (AR 50). Plaintiff has work history as a building maintenance repairer, stock clerk, and housekeeping cleaner. (AR 47-49, 59-60). Plaintiff testified that he has weakness, tingling, weakness, and pain in both elbows and hands. (AR 52). He gets tingling and numbness starting at the elbows, if he doesn't change position he loses feeling completely, and then pain "starts to build." (AR 52). Plaintiff reported that he could lift "maybe" 10 pounds but not repetitively throughout the day, he can use his upper extremities for 30 minutes before he has to take a break, he uses his upper extremities for a maximum of 2 to 3 hours in an 8-hour workday, and he lays down due to pain about 2 hours a day. (AR 52-54). Plaintiff testified he has pain in his neck almost every day. (AR 55).

# III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

2

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable

of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.  ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2020, the alleged onset date. (AR 19). At step two, the ALJ found that Plaintiff has the following severe impairments: thoracolumbar degenerative disc disease with lumbar scoliosis; cervical degenerative disc disease; bilateral carpal tunnel syndrome; bilateral cubital tunnel syndrome; and chronic obstructive pulmonary disease. (AR 20). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 22). The ALJ then found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except could only occasionally climb, stoop, kneel, crouch and crawl; could occasionally engage in balance on uneven surfaces; could have occasional exposure to concentrated airborne irritants such as fumes, odors, dusts, gases and poorly ventilated areas; and, with the bilateral upper extremities, could frequently reach, handle and finger objects.

(AR 23). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 34). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including garment sorter, gate attendant, and office helper. (AR 34-35). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2020, through the date of the decision. (AR 35).

## VI.  ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his disability

insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the RFC was supported by substantial evidence in light of the ALJ's consideration of the medical opinion of Randi A. Galli, M.D., FACS; and

2. Whether the ALJ properly considered Plaintiff's symptom claims regarding repetitive, prolonged use of his upper extremities/elbows.

(Doc. No. 10 at 3-16).

## VII.   DISCUSSION

### A.  RFC/Medical Opinion

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Here, Plaintiff argues the ALJ failed to properly evaluate Dr. Galli's opinion as to Plaintiff's upper extremity limitations. (Doc. No. 10 at 3-12). In March 2023, Plaintiff's treating specialist Randi A. Galli, M.D., FACS, opined that Plaintiff was limited to "no prolonged repetitive motion (rotation, flexion, extension, etc….) bilateral elbows." (AR 2928). The ALJ "ultimately" found "the evidence as a whole inconsistent with the elbow limit endorsed by Dr. Galli. Thus, the opinion is unpersuasive." (AR 33).

First, as to the supportability factor, "the more relevant the objective medical evidence and

supporting explanations *presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1) (emphasis added). Here, presumably as to the supportability factor, the ALJ cites to a single March 2023 treatment visit with Dr. Galli with the notation that the "exhibit" containing Dr. Galli's opinion also included "exam notes as attempted support." (AR 33 (citing AR 2946-51)). The ALJ acknowledged that Plaintiff endorsed pain in his elbows and numbness in his fingers, and "there were signs of bilateral cubital tunnel"; "yet" there was no atrophy or abnormal 2-point discrimination, grip strength "appeared rather decent," and "even though the claimant prefers to avoid surgery, exam findings were fairly decent." (AR 33). Plaintiff argues these findings "lack any specificity or explanation" and the ALJ's reference to "signs of cubital tunnel syndrome as a reason to reject Dr. Galli's limitations is ambiguous and unclear at best, given that Dr. Galli documented multiple objective testing findings and provided extensive explanation, confirming the diagnosis of Cubital Tunnel Syndrome." (Doc. No. 10 at 5). The Court agrees.

When considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 ("This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). As noted above, the Ninth Circuit further clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).

Here, the ALJ does not identify with specificity or explain how the described "rather decent" grip strength and "fairly decent" examination findings fail to support Dr. Galli's opined limitations on Plaintiff's ability to use his upper extremities. More notably, as argued by Plaintiff, the ALJ fails to consider extensive objective findings and supporting explanations by Dr. Galli in the cited March 2023 treatment note, including left and right ulnar "neuropathy localized to the cubital tunnel, chronic, with frequent numbness and paresthesias" involving the ring and little fingers, "nearly always during a period of elbow flexion, diagnosed previously in the QME evaluation by Donald Pompan, M.D. QME and supported by the electrodiagnostic study by Sanjay Deshmukh, M.D. on 10/18/2021 … demonstrating a significant slowing of the motor conduction velocity across the level of the [right and left] elbow, symptomatic, presently appearing to have findings consistent with a neuropraxia injury presently still very symptomatic despite nocturnal use of the elbow splint greater than three months." (AR 2949-50; *see also* AR 1457-58, 1509-21). Similarly, the ALJ does not consider an earlier treatment note from October 2022, wherein Dr. Galli conducted a thorough review of Plaintiff's medical records; diagnosed Plaintiff with lesion of the ulnar nerve in the right and left upper limb and carpal tunnel of the right and left upper limb; and prescribed an elbow splint for three months on the left elbow, followed by three months on the right elbow. (AR 2930-37).

Finally, Plaintiff argues the ALJ "erroneously 'cherry picked' findings out of context with Dr. Galli's complete notation" in finding "while there were signs of bilateral cubital tunnel, there was no atrophy or 2-point discrimination." (Doc. No. 10 at 9). As noted by Plaintiff, "a review of the actual treatment record in its entirety reveals that this sentence was in reference to the documentation of a detailed discussion Dr. Galli had with [Plaintiff] regarding the benefits and drawbacks of the undergoing surgery …. [T]here is no indication that Dr. Galli was citing these objective findings as reasons to increase [Plaintiff's] RFC capacity but rather explaining why he agreed with [Plaintiff's] decision to hold off on surgery for the time being." (*Id*.). Moreover, the ALJ does not appear to consider Dr. Galli's extensive discussion of "future medical care" which further explains that while Plaintiff is a candidate for surgery, about 30% of those who undergo the surgery do not experience long-term relief, and as particularly relevant to the limitations

1 assessed here, "[f]or patients that have to perform prolonged elbow flexion or highly repetitive
2 elbow flexion and extension as part of their work, [the surgery] is often insufficient. The ulnar
3 nerve is still subject to the same stretch and forces as it was prior to surgery. Hence, their
4 symptoms return." (AR 2950). Based on the foregoing, the ALJ failed to provide the requisite
5 explanation for how Dr. Galli's opined limitation as to Plaintiff's upper extremities is
6 unsupported by the objective findings and explanations in Dr. Galli's own treatment notes.

7     The Court notes that Defendant offers no argument specifically as to the ALJ's
8 supportability analysis; instead, the Commissioner generally argues that the "Ninth Circuit has
9 clearly stated that an ALJ may find an opinion unpersuasive because either it was unsupported by
10 evidence from the medical source or inconsistent with other evidence." (Doc. No. 13 at 7 (citing
11 *Woods*, 32 F.4th 793)). Defendant has arguably waived any argument that this reason was legally
12 sufficient by failing to respond to Plaintiff's specific arguments regarding the supportability
13 factor. *See, e.g., Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26, 2023)
14 (collecting cases) ("The Government's failure to defend Plaintiff's allegations of error, … is a
15 concession of those alleged errors."). Regardless, the Court notes that, aside from *Woods*, the
16 only case law offered in support of Defendant's argument that the ALJ properly considered the
17 Dr. Galli's opinion is a recent Ninth Circuit case affirming an ALJ's finding that an opinion was
18 unpersuasive because "while the opinion was supported by examination notes, it was 'not
19 consistent with the longitudinal evidence of record.'" (Doc. No. 13 at 8 (citing *Allen v. Kijakazi*,
20 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023). The instant case is distinguishable from *Allen*
21 because the ALJ in that case found the opinion *was* supported by examination notes but still
22 found it unpersuasive because it was not consistent with the longitudinal record, whereas here, as
23 discussed in detail above, the ALJ finding as to the supportability factor was not supported by
24 substantial evidence. (*See* AR 33).

25     Second, as to the consistency factor, the ALJ noted, without citation to the record or
26 supporting evidence, that "while subjective complaints have continued and there have been some
27 observed objective abnormalities, at times, many exams, even with only conservative treatment,
28 have reflected good upper extremity strength, full range of motion and normal sensation.

1  Ultimately, the undersigned finds the evidence as a whole inconsistent with the elbow limit
2  endorsed by Dr. Galli." (AR 33).  Plaintiff argues the ALJ does not adequately support this
3  finding.  (Doc. No. 10 at 10-12).  The Court agrees.
4       In support of this finding, the ALJ generally references "many exams" that "have reflected
5  good upper extremity strength, full range of motion and normal sensation," without citation to
6  medical evidence from the record that is inconsistent with the precise limitations opined by Dr.
7  Galli, or explanation as to how the "many exams" are inconsistent with those limitations.  (*See*
8  AR 33); *see Woods*, 32 F.4th at 792 (in rejecting an examining or treating doctor's opinion as
9  unsupported or inconsistent under the new regulations, an ALJ must still provide an explanation
10 supported by substantial evidence).  Defendant cites a portion of the ALJ's summary of the
11 medical evidence that could arguably support a finding of that Dr. Galli's opined limitations are
12 inconsistent with the "evidence as a whole," including "normal gait good extremity strength and
13 range of motion, and full lumbar range of motion as well as some observations of modest upper
14 extremity weakness." (Doc. No. 13 at 8 (citing AR 29, 593-94, 653 (visit only related to back
15 pain), 666-67, 686-87, 697, 1117, 1217 (upper extremity strength 4/5), 1221, 1357-58 (visit
16 related only to back pain), 1637-38, 1721 (visit related only to back pain), 1841, 1924, 1942,
17 1981, 1990, 2001, 2040, 2068, 2111, 2923-24)).
18       However, while the evidence cited by Defendant was included in the ALJ's summary of
19 the medical evidence, it was not cited by the ALJ as evidence of inconsistency between Dr.
20 Galli's opinion and the overall record.  (*See* AR 33); *Bray v. Comm'r of Soc. Sec. Admin.*, 554
21 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning
22 and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what
23 the adjudicator may have been thinking.").  Moreover, as noted by Plaintiff and observed in a
24 number of the treatment notes cited by Defendant *supra*, while the longitudinal record contains
25 evidence of more benign examination findings particularly in 2020, the record also includes
26 ongoing evidence throughout the relevant adjudicatory period of pain and tenderness to palpation
27 in the bilateral upper extremities, decreased grip strength, positive Tinel and Phalen signs,
28 positive left cubital Tinel's test, diagnosis of bilateral ulnar motor neuropathy across the elbow,

11

and diagnosed of bilateral cubital tunnel syndrome. (Doc. No. 10 at 10-12; AR 594, 643, 648, 664, 674, 686-88 (noting "presumed carpal tunnel syndrome" and prescribing wrist splints to wear nightly), 692, 694-97, 1117, 1182, 1443-48 (examination findings confirming clinical symptoms consistent with bilateral cubital tunnel syndrome), 1457-58 ("Abnormal [Nerve Conduction Study] with findings of bilateral Ulnar motor neuropathy across the elbow"), 1501 (positive left cubical Tinel's test), 1526 (same), 1536 (same), 1548 (same), 1561, 1915 (decreased grip strength bilaterally), 1924, 1942, 1990, 2001, 2040, 2052, 2068, 2923-24, 2949-50, 3013-21 (noting surgery was recommended by Dr. Galli, "an upper extremity specialist")). Thus, the ALJ's finding that Dr. Galli's opinion was unpersuasive because it was inconsistent with the "evidence as a whole," was not supported by substantial evidence.

Based on the foregoing, the ALJ's finding that Dr. Galli's opinion was not persuasive is not supported by substantial evidence. On remand, the ALJ should reconsider Dr. Galli's medical opinion, along with all relevant medical opinion evidence.

### B. Additional Assignments of Error

Plaintiff also argues the ALJ failed to properly consider Plaintiff's subjective complaints. (Doc. No. 10 at 12-16). In light of the finding, discussed in detail *supra*, that the RFC needs to be reassessed due to improper consideration of Dr. Galli's medical opinion and the relevant medical evidence, the Court declines to consider this challenge in detail here. On remand, the ALJ is instructed to reconsider the relevant medical opinion evidence and conduct a new sequential analysis, including a reevaluation of Plaintiff's symptom claims, and a reassessment of the RFC and step five finding if necessary.

### C. Remedy

Plaintiff asks the Court to remand for an immediate award of benefits. (Doc. No. 10 at 16). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the

delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court recommends that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate all relevant medical evidence, including medical opinions, as well as Plaintiff's symptom claims during the relevant adjudicatory period. The ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 10) be GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 13) be DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. The district court direct the Clerk to enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

### **NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C). A party's failure to file objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: September 8, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE